FERD MESSMER MFG. CO. v. ALBERT PICK & CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 15, 1918.)

No. 5031.

1. PATENTS ⬦328—VALIDITY—INFRINGEMENT.

The Pick patent, No. 1,107,700, for an improvement in drinking glasses, consisting of a shallow bulge below the rim, etc., *held* valid, the invention not having been anticipated or in prior use, and also *held* infringed.

2. PATENTS ⬦312(3)—VALIDITY—PRIOR USE—EVIDENCE.

To sustain the defense of prior use in a suit for patent infringement, the proof thereof must be clear, satisfactory, and beyond a reasonable doubt.

3. PATENTS ⬦15, 328—DESIGN—VALIDITY.

The Pick design patent, No. 44,616, for a drinking glass made with a bulge to protect the rim, *held* invalid, the bulge not being ornamental within Rev. St. § 4929 (Comp. St. 1916, § 9475).

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by Albert Pick & Co. and another against the Ferd Messmer Manufacturing Company, a corporation. From a decree for complainants, defendant appeals. Affirmed in part, and in part reversed.

William K. Small, of St. Louis, Mo. (William F. Small, of St. Louis, Mo., on the brief), for appellant.

Fred Gerlach, of Chicago, Ill. (Douglas W. Robert, of St. Louis, Mo., on the brief), for appellees.

Before HOOK, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. This is an action to enjoin appellant from infringing letters patent No. 1,107,700, issued to Hugo Pick August 18, 1914, for an improvement in drinking glasses, and letters patent No. 44,616, issued to said Pick September 2, 1913, for a design for a drinking glass. Albert Pick & Co. are exclusive licensees. Appellant denied the validity of the patents, and pleaded anticipation, prior use, noninfringement, and double patenting. In his application for the structural patent Pick stated his claim as follows:

"As an article of manufacture, a drinking glass having a suitable wall projecting upwardly from a base portion and terminating in an integral fragile

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rim of the same general contour and constituting a continuation of said wall, the wall being formed with a shallow bulge arranged below the rim to leave the usual mouth-engaging portion, but contiguous thereto, and projecting beyond the normal plane of the wall, the bulge being of relatively narrow width and being curved outwardly to present concavo-convex portions terminating in opposite directions vertically in gradual, reverse curvatures, merging into adjoining portions of the wall above and below the bulge to present uninterrupted smooth exterior and interior surfaces devoid of sharp lines or angles, and said bulge being arranged with reference to the mouth of the glass to insure separation of its fragile rim from similar rims of other glasses when grasped in group, to preserve said rim against fracture, substantially as described."

The following figure illustrates the patented article:

The drinking glass is sold under the trade-name of "Nonik." Their sale has been commercially successful in competition with the regular straight thin blown drinking glass, and also the same character of drinking glass made of heavy pressed glass, although the price of the "Nonik" is 20 per cent. higher than the others. Pick stated in his specifications that the object of the invention was to provide a drinking glass of any of the numerous forms generally used, which would be rendered less  readily breakable when accidentally tipped over upon a supporting surface, such as a table, bar, or the like, and in which the rim would be protected against chipping when a number of the glasses were collected in the hand; also to provide means whereby a better grip might be obtained upon the interior of the glass, when a plurality of the same are gathered in the hand by insertion of the fingers therein, whereby slippage would be obviated.

"Another important feature is the fact that the bulge B, while presenting its exterior convex surface, is not abruptly joined to the upper end lower straight portions of the cylindrical wall of the tumbler, but are connected therewith through the medium of reverse curves, and merging in a general gradual curvature into said upper and lower straight portions. Thus clear lines of demarcation or angles adapted to crack or break upon pressure being applied to the bulge are entirely eliminated, and vertically of the tumbler, three arches, so to speak, provided, through which the forces of impact are distributed throughout the body of the glass, co-operating, of course, with the arch circumferentially of the glass. This arrangement also avoids shoulders or underlying crevices into which particles may accumulate and interfere with quick and easy cleaning of the interior of the tumbler so often required."

[1, 2] The evidence is undisputed that the creation of the bulge in the glass in the manner specified adds 40 per cent. in crushing strength to the straight-sided drinking glass. The evidence also shows that the object of the invention, as stated in the specifications, has been accomplished. We are of the opinion that the bulge in the drinking

glass, as described in the claim of Pick, was new and useful, and that the structural patent is valid, so far as invention and novelty are concerned. The evidence shows that appellant sold drinking glasses which could not be distinguished from the patented glass, and thereby infringed. We do not think the Pick patent was anticipated by the design patent to W. Buttler, No. 29,813, December 20, 1898, the design patent to F. R. Cornwall, No. 23,871, December 11, 1894, the design patent to J. Matthews, No. 2,440, September 25, 1866, nor the patents to Williams, No. 237,150, February 1, 1881, to Caldwell, No. 370,681, September 27, 1887, and to W. Helmer, No. 38,248, September, 25, 1906.

In all the drinking glasses or jars prior to the Pick patent the bulge in the wall of the glass is severe. In some cases the bulge is used as a stop for a cover to the jar. In other glasses the swell of the glass starts from near the bottom of the glass, gradually swelling outwardly until the top is reached. According to the evidence these glasses were formed in this way for the purpose of being placed in a holder as soda glasses are, and the evidence shows that these glasses are not considered as containing anything similar to the bulge in the patented glass. The trial court found in reference to the alleged Anderson glass that the defense of prior use had not been established. We concur in this finding. As to this defense the law requires that the proof shall be clear, satisfactory, and beyond a reasonable doubt. The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154. It was said in Adamson v. Gilliland, 242 U. S. 350, 37 Sup. Ct. 169, 61 L. Ed. 356, that a patent case is pre-eminently one for the application of the practical rule that so far as the finding of the master or judge who saw the witnesses depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable.

[3] So far as the question of double patenting is concerned, we do not think it can arise in this case, for the reason that we are of the opinion that the design patent is not valid. The bulge in the patented glass cannot be said to be ornamental within the meaning of section 4929 of the Revised Statutes (Comp. St. 1916, § 9475). There is nothing in the bulge of the patented glass which would appeal to the esthetic emotions or to our idea of the beautiful. While the bulge may be new and useful, we cannot say that it has added anything to decorative art.

The decree below is affirmed so far as the structural patent is concerned, and reversed in so far as it relates to the design patent.