## ZIP MFG. CO. v. PUSCH.*

(Circuit Court of Appeals, Eighth Circuit. November 5, 1924.)

No. 6592.

1. **Patents 159—Evidence of anticipation held admissible as to construction, but not competent as to validity.**

Under Rev. St. § 4920, as amended by Act March 3, 1897, § 2 (Comp. St. § 9466), in a patent infringement suit, evidence of prior patents and prior use, though not competent to show invalidity, because not set up in answer and the required notice not having been given, is nevertheless admissible for purpose of construction of patent.

2. **Patents 162—Statements in patent as to condition of prior art properly considered on question of validity.**

In infringement suit involving patent for abrasive compound, clear statements in patent that grinding mixtures employing oil as an ingredient were known to the art, and that the improvement claimed was a change from oil to starch, was properly to be considered on question of validity.

3. **Patents 42—Combination of old elements to effect old result in better manner may amount to invention.**

Where a patent consists of old elements to accomplish an old purpose, but the elements are put into a new combination and accomplish the old result in a more facile, economic, and efficient manner, there may be such novelty as amounts to invention, rather than mere improvement.

4. **Patents 112(3)—Patent presumes novelty, and burden on infringer to prove invalidity with reasonable clearness.**

Granting of patent creates presumption of novelty, and one attacking its validity has burden to prove invalidity with reasonable clearness.

*Rehearing denied February 16, 1925.

**5. Patents ⬤⟳328—1,353,197, for abrasive compound, held valid.**

Werder patent, No. 1,353,197, for abrasive grinding compound, *held* valid.

Appeal from the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Suit for patent infringement by the Zip Manufacturing Company against Frederick A. Pusch. From a decree of dismissal on the merits, plaintiff appeals. Reversed and remanded.

Richard S. Fillius and Platt Rogers, both of Denver, Colo. (Edmund Rogers, of Denver, Colo., on the brief), for appellant.

William W. Garwood, of Denver, Colo. (Omar E. Garwood and Everett Bell, both of Denver, Colo., on the brief), for appellee.

Before STONE, Circuit Judge, and MUNGER and MILLER, District Judges.

STONE, Circuit Judge. This is a bill for infringement of letters patent No. 1,353,197, dated September 21, 1920, issued to John F. Werder for a compound used in grinding or smoothing metal surfaces. From a decree dismissing the bill on the merits, plaintiff brings this appeal.

The answer in this case is a general denial and that the idea for this invention was secured from a grinding compound known as "Volcano Abrasive" made and marketed by David R. Hawes. At the trial, over objection of plaintiff, evidence was introduced of prior patents in the same general field and of similar substances used in the trade. There was also introduced evidence as to the contents of the "Volcano Abrasive" and of Werder's familiarity with and use of that compound. The evidence tended to show the following facts:

In grinding automobile and other valves, engine throttles and other machinery where accurate contact is desired, an abrasive is used. The abrasive most commonly employed is carborundum. However, the abrasive cannot be successfully used by itself. To permit the greatest amount of evenly distributed friction it is necessary to mix the abrasive with other ingredients to hold it evenly in suspension. The "binder" most commonly used is any kind of lubricant. It was a common practice for mechanics, in the shop, to mix carborundum and emery or other abrasive with such lubricants as might be available to them and thus form a grinding compound. Such a compound would accomplish the purposes but required much

time in the operation because the lubricating qualities in the "binder," to a certain extent, retarded and nullified the effect of the abrasive. The virtue claimed by Werder for his compound, and which seems to be abundantly established in the evidence, is that it required much less time to secure the same results. This he accomplished through the use of starch, instead of lubricants, as a "binder." This compound, when used with water, accomplished the same results as other binders and, lacking the retarding effect of lubricants, did so in a fraction of the time necessary for others.

As to the Volcano mixture, the evidence was that it contained starch as a "binder"; that Werder had been familiar with this product and sold it, as an agent, for a short while. The period during which Werder knew and handled Volcano was between the dates when he claims to have made his discovery and when he applied for his patent. He testifies positively that he had no knowledge of the constituents of the Volcano mixture except that a drug clerk had examined it, smelling and dipping some of it upon a pencil end, and had told him it contained gelatine, graphite and citronella oil (the latter having no value except as an odorizer). He says he knows nothing of chemistry and never had an analysis made of the Volcano mixture. Both he and one other witness testified to the use of his own mixture antedating his connection with or knowledge of the Volcano compound. There was no testimony, beyond that just narrated, that he had knowledge of the elements in the Volcano mixture, unless such an inference should be drawn from his having used and sold that mixture and having stated, as one witness testifies, that it was the best mixture he had ever used.

The basis of the court's determination is stated as follows:

"I am of the opinion that the Werder patent does not show a sufficient advancement in the art to say that its discovery involved the inventive genius as distinguished from a mere advance in mechanical skill. All mechanics who had occasion to use a grinding compound, have for many years been experimenting and making up various mixtures—some of them containing carborundum and free from oil, which is the chief advantage claimed from this invention. This view is also strengthened by the undisputed evidence that the plaintiff had the agency for, and sold, a considerable quantity of 'Volcano,' a similar preparation, previous to his making application for this

patent, and the language of the specification, particularly lines 74–94."

The part of the specifications referred to in the above quotation is as follows:

"In the ordinary compounds upon the market it is found that most of them employ oil as the ingredient for mixing, and the greatest amount of friction cannot be obtained by the character of the oil itself, whereas with water as the mixing ingredient, the greatest amount of friction will be obtained.

"This compound, by reason of the starch, or other glutinous binder, easily soluble in water, by the combined action of the friction and water releases more evenly the powdered grains of carborundum so as to accomplish in use, what you might call a cushioning and more even and ready distribution with greater freedom from the sticking or adhering in one place by the abrasive grains, as in the case of abrasives employing oil, thereby avoiding the making of grooves and uneven surfaces, and with greater rapidity producing a more evenly ground surface."

[1] Appellant contends that the evidence concerning prior patents was not proper under the issues in this case, and could not be considered in connection with the validity of the patent. He makes the same contention concerning the evidence of common usage of other compounds in the art. In this contention he is only partially correct. Under the pleadings here, the issues were limited by the statute (Rev. St. § 4920, as amended by Act March 3, 1897, § 2 [Comp. St. § 9466]), in so far as challenge of the validity of the patent on the basis of lack of novelty is concerned, to what might be shown regarding the Volcano mixture and what might be revealed by his knowledge in his own statement in his patent here in suit. While evidence of prior patents and of prior use was properly introduced in evidence for the purpose of construction of the patent, it was not competent to show invalidity. The rule is stated in Grier v. Wilt, 120 U. S. 412, 429, 7 S. Ct. 718, 729 (30 L. Ed. 712), where the defendant sought to introduce earlier patents, the court said:

"Their introduction was objected to by the plaintiff, because they were not set up in the answer. But they were receivable in evidence to show the state of the art, and to aid in the construction of the plaintiff's claim, though not to invalidate that claim on the ground of want of novelty, when properly construed. Vance v. Campbell, 1 Black, 427, 430; Railroad Co. v. Dubois, 12 Wall.

47, 65; Brown v. Piper, 91 U. S. 37, 41; Eachus v. Broomall, 115 U. S. 429, 434." The same rule has been applied as to former usage. Brown v. Piper, 91 U. S. 37, 43, 23 L. Ed. 200. Also see Sodemann Heat & Power Co. v. Kauffman, 275 F. 593, 596 (this court); Stevens v. Rodgers B. & B. Co., 186 F. 631, 637, 108 C. C. A. 495 (6th C. C. A.); Morton v. Llewellyn, 164 F. 693, 90 C. C. A. 514 (9th C. C. A.); Jones v. Cyphers, 126 F. 753, 754, 62 C. C. A. 21 (2d C. C. A.). In accordance with the above rule, this evidence concerning prior patents and earlier usage was admissible to aid the court in properly construing the scope of the patent but not to be considered in connection with the inquiry relating to the validity of the patent.

[2] We think it certain, however, that the statements made by appellant in the very patent now in suit, can be used, without violation of the statute, in considering the validity of the patent. The purpose of the statute is to prevent surprise in the evidence by giving the plaintiff thirty days notice of the particular patents and usage which will be relied upon in the challenge of the patent. Obviously, where the plaintiff must know of such instances, this notice serves no purpose. Such was the case of Brown v. Piper, cited above, where prior usage was of such nature that the court took judicial notice thereof. It would seem to be an even clearer occasion for applying the same reasoning where the usage relied on is shown, in the language of the very patent in suit, to have been known to the plaintiff at that time. We think, therefore, that the trial court was right in considering, on the point of validity, the clear statement in this patent that grinding mixtures, employing oil as a "binder," were known to the art and that the improvement claimed was a change in the "binder" from oil to starch.

[3-5] If this view of the law and the evidence be correct, the issue of novelty considered by the court was fairly presented. The question is whether the change in "binder" was sufficient to constitute invention or whether it arose no higher than an improvement. It may be conceded that, at most, the patented mixture is made up of old elements to accomplish an old purpose. But where old elements are put into a new combination and accomplish an old result in a more facile, economical and efficient manner, there may be such novelty as amounts to invention. The following cases in this court announce that doctrine: Minneapolis, etc., Ry. Co. v. Barnett & Record Co., 257 F.

302, 306, 168 C. C. A. 386; Denning W. & F. Co. v. Am. S. & W. Co., 169 F. 793, 95 C. C. A. 259; Anderson v. Collins, 122 F. 451, 58 C. C. A. 669; Ide v. Carpet Co., 115 F. 137, 53 C. C. A. 341; Kinloch Tel. Co. v. Western Elec. Co., 113 F. 659, 51 C. C. A. 369; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 F. 693, 45 C. C. A. 544. It is often very difficult to determine whether a change is an invention or merely an improvement. This difficulty becomes more acute in a case of this sort where old elements are combined to accomplish an old result. However, the evidence is uncontradicted that appellant's mixture accomplishes the same purpose as the oil binder mixtures with equal results and with a material saving in time. This saving naturally means economy. With this close issue of fact, the court can make good usage of pertinent legal presumptions. One of these is that the granting of a patent carries with it the presumption of novelty. Gandy v. Main Belting Co., 143 U. S. 587, 596, 12 S. Ct. 598, 36 L. Ed. 272; Cantrell v. Wallick, 117 U. S. 689, 695, 6 S. Ct. 970, 29 L. Ed. 1017; Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 26 L. Ed. 939; Seymour v. Osborne, 11 Wall. 516, 538, 20 L. Ed. 33. Another is that one attacking the validity of a patent is required to make good that attack with reasonable clearness. Cantrell v. Wallick, 117 U. S. 689, 696, 6 S. Ct. 970, 29 L. Ed. 1017; Goessling Box Co. v. Gumb, 241 F. 674, 679, 154 C. C. A. 432 (this court); Schumacher v. Mfg. Co., 292 Fed. 522, 533 (9th C. C. A.). The effect of these two presumptions, if they are not different statements of the same presumption, is that all reasonable doubts are to be resolved in favor of the patent. Applying the above presumptions, and having in mind the evidence last above referred to, we think the patent should be held valid.

A suit for infringement of a patent is an action between the immediate parties to the suit, must be determined upon the issues and evidence therein presented and, in a strict legal sense, affects their rights alone. However, if the patent is attacked and sustained, such judicial affirmation of validity must naturally have a practical effect wider than the immediate parties. It gives the patent a standing and assurance before the world which, usually, it did not possess before such decision. Because of this broader practical effect and because of evidence in this record relating to prior usage as well as offers of proof along similar lines, this court feels justified in stating that the result here reached would have been even more doubtful had the issues been such that the above character of proof could have been considered.

With instructions to proceed in accordance with this opinion, the decree is reversed and the cause remanded.